David H. Kwasniewski, Esq. (SBN: 281985)
kwasniewski@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
Fax: (415) 276-1808

Amelia Courtney Hritz, Esq. (*pro hac vice forthcoming*)
hritz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Ave, 23rd Floor
New York, NY 10016
Tel: (646) 829-9403
Fax: (646) 403-4089

*Attorneys for Defendant Huel Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EDEN MCKIE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HUEL INC.,

Defendant.

Case No. 3:26-cv-00653-CRB

**DEFENDANT HUEL LTD.'S MOTION TO DISMISS PLAINTIFF EDEN MCKIE'S FIRST AMENDED COMPLAINT**

| | |
|---|---|
| **Date:** | October 23, 2026 |
| **Time:** | 10:00 A.M. PT |
| **Courtroom:** | 6 |
| **Judge:** | Hon. Charles R. Breyer |
| **Complaint Filed:** | January 21, 2026 |
| **First Amended Complaint:** | May 22, 2026 |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on Friday, October 23, 2026, at 10:00 a.m. PT, in Courtroom 6 of the above-captioned Court, located at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Huel Ltd. will and hereby does move this Court for an Order dismissing Plaintiff Eden McKie's First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

The motion is based upon this Notice of Motion, the accompanying Memorandum in support of the Motion, the files and records in this action, and any further evidence and argument that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should the First Amended Complaint be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks Article III standing?

2. Should the First Amended Complaint be dismissed with prejudice pursuant to Rule 12(b)(6) because Plaintiff cannot state claims upon which relief may be granted?

Dated: August 27, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: ______________________
David H. Kwasniewski, Esq.

*Attorneys for Defendant Huel Ltd.*

# TABLE OF CONTENTS


STATEMENT OF ISSUES TO BE DECIDED ..... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

RELEVANT FACTUAL BACKGROUND ..... 4

A. Huel and Its Products ..... 4

B. Plaintiff's Claims ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 5

I. PLAINTIFF LACKS STANDING BECAUSE SHE WAS NOT INJURED ..... 5

II. PLAINTIFF'S WIRETAPPING CLAIMS FAIL BECAUSE HUEL WAS A PARTY TO THE COMMUNICATIONS ..... 7

III. PLAINTIFF'S WIRETAP ACT AND CIPA § 631 CLAIMS FAIL BECAUSE NO ACTUAL COMMUNICATION WAS INTERCEPTED ..... 9

IV. PLAINTIFF'S CIPA § 632 CLAIM FAILS BECAUSE SHE DOES NOT PLAUSIBLY ALLEGE ANY CONFIDENTIAL COMMUNICATION WAS INTERCEPTED ..... 10

V. PLAINTIFF'S CDAFA CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE UNAUTHORIZED ACCESS, TAKING OF HER DATA, OR RESULTING LOSS ..... 12

VI. PLAINTIFF FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ..... 14

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 10

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 2, 7, 8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .......... 5

*Dawson v. Meta Platforms, Inc.*,
No. 26-cv-00751-RFL, 2026 WL 2137134 (N.D. Cal. July 23, 2026) .......... 13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 2, 7, 8

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) .......... 5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 14, 15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 9

*Hazel v. Prudential Fin., Inc.*,
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 14

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 3, 14, 15

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 10, 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 9

*In re Google Inc.*,
No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 11

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal 2012) .......... 15

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) .......... 12, 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 14, 15

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 2, 9, 10

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 10

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 10

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 8

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 5

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 11

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 6

*Ramos v. Gap, Inc.*,
No. 23-CV-04715-HSG, 2025 WL 2144837 (N.D. Cal. July 29, 2025) ........ 9

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 14, 15

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 11

*Torres v. SeatGeek, Inc.*,
No. 25-cv-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026) ........ 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 6

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 10

*Zocco v. Nelnet, Inc.*,
No. 25-cv-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ........ 8

**STATUTES**

18 U.S.C. § 2510(8) ........ 9

18 U.S.C. § 2511 ........ 7, 8

Cal. Penal Code § 502 ........ 12, 13

Cal. Penal Code § 631 ........ 7, 9, 10

Cal. Penal Code § 632 ........ 11, 12

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ........ 1

Federal Rule of Civil Procedure 12(b)(6) ........ 5

Defendant Huel Ltd. respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Eden McKie's ("Plaintiff") First Amended Complaint.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Huel is a U.K.-based food company that makes nutritionally complete shakes and snacks made from plant-based, sustainable ingredients. Huel operates a website at huel.com (the "Website") through which consumers can browse products, review information, and make purchases. Like every company with a website these days, Huel monitors how its users engage with its Website to ensure they have an optimal experience and make sure its advertisements are transmitted to people who are actually interested in Huel's products. The technologies Huel employs to perform these standard website functions are the same technologies used by virtually every other company that sells or markets products online. Huel also provides visitors to the Website with tools to manage how their data is collected and shared.

Plaintiff's copy-and-paste Complaint alleges that Huel's standard website technology is an illegal wiretap, computer hacking, or an invasion of her California Constitutional Right to Privacy, even though it does not allege Huel accessed any actually private information or hacked Plaintiff's devices and concedes Plaintiff shared the very same details with Facebook, TikTok, and Snap. (FAC ¶ 5.) Plaintiff's lawyers have advanced the same grab-bag of theories against dozens of other businesses operating websites that, like Huel's, do nothing more than try to sell products to people across the internet.[1] Plaintiff's claims fail for at least six reasons.

***First***, Plaintiff lacks standing because she fails to allege any cognizable injury. Plaintiff alleges that Huel collected her name, email address, and a record of the Huel meals she purchased.

[1] Plaintiff's lawyers have filed over a dozen of these cases in 2026 alone. *Costello v. Posh Peanut Inc.*, No. 3:26cv4883 (S.D. Cal.); *Turner v. Edible Arrangements LLC*, No. 2:26cv2707 (E.D. Cal.); *Gray v. MeUndies Inc.,* No. 2:26cv2171 (E.D. Cal.); *Farve v. River Light V*, No. 3:26cv5140 (N.D. Cal.); *Aquino-Roraldo v. Med. Mgmt. Int'l*, No. 26CIV03348 (San Mateo Sup.); *Eichinger v. 33Across Inc.*, No. 3:26cv2967 (N.D. Cal.); *Saunders v. Oofos Inc.*, No. 3:26cv2537 (N.D. Cal.); *Kelly v. Roka Sports Inc.*, No. 4:26cv2383 (N.D. Cal.); *Ramos v. Kicks Crew LLC*, No. 4:26cv2272 (N.D. Cal); *Zhu v. Equativ Inc.*, No. 3:26cv1976 (N.D. Cal.); *Brown v. Trove Brands LLC*, No. 3:26cv1774 (N.D. Cal.); *Babka v. United Legwear Co.*, No. 4:26cv1702 (N.D. Cal.); *Zhu v. Pinterest Inc.*, No. 3:26cv1529 (N.D. Cal.); *Babbini v. Id5 Tech. Inc.*, No. 4:26cv1428 (N.D. Cal.); *Lanzarin v. The Topps Co. Inc.*, No. 3:26cv63 (N.D. Cal.).

Nothing about that information is inherently sensitive or private, and its alleged transmission does not constitute the concrete injury Article III requires. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

***Second***, Plaintiff's Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), and California Invasion of Privacy Act ("CIPA") § 631 claims fail because Huel was a party to the alleged communications. Both statutes permit a party to a communication to receive it. Huel thus cannot have illegally "intercepted" communications between Plaintiff and Huel. Nor does the Complaint plausibly allege that Huel "intercepted" her communications with Huel for a criminal or tortious purpose. Indeed, Plaintiff acknowledges that Huel collected information from Plaintiff "for targeted advertising purposes" (FAC ¶ 153), which is a commercial purpose, not a tortious one, *e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024). Plaintiff's CIPA aiding and abetting theory also fails because the third-party technologies that helped Huel analyze activity on its Website are employed by Huel for its own business purposes, making the providers extensions of the Website, not third-party eavesdroppers. *See, e.g.*, *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 (C.D. Cal. 2023).

***Third***, Plaintiff's Wiretap Act and CIPA § 631 claims separately fail because she does not plausibly allege that the "contents" of any communication were intercepted, as those statutes require. Plaintiff alleges that Huel shared information about who she was and what pages she viewed on the Website. She does not allege that Huel shared anything she actually said or typed, such as a search term. Her claims are therefore foreclosed by *In re Zynga Privacy Litigation*, which held that "basic identification and address information, not a search term or similar communication made by the user, and therefore does not constitute the contents of a communication." 750 F.3d 1098, 1109 (9th Cir. 2014).

***Fourth***, Plaintiff's CIPA § 632 claim fails because she does not plausibly allege that any confidential communication was intercepted. Section 632 expressly excludes communications that the parties reasonably expect may be recorded, and ordinary internet communications are necessarily recorded so that a website can respond to a user's requests. Plaintiff's allegation that she rejected tracking does not transform her ordinary interactions with the Website into

confidential communications.

***Fifth***, Plaintiff's California Computer Data Access and Fraud Act ("CDAFA") claim fails for several independent reasons. The Complaint does not plausibly allege that Huel accessed or altered Plaintiff's computer without permission, took data from her computer, introduced a computer contaminant, or caused her any resulting damage or loss. Instead, the Complaint alleges that Huel received information generated when Plaintiff voluntarily interacted with the Website and used that information for advertising. That is not computer fraud.

***Sixth****,* Plaintiff's constitutional privacy claim fails because the Complaint does not plausibly allege a legally protected privacy interest or a serious invasion of privacy. The alleged disclosure of information such as Plaintiff's name, email address, and a record of the Huel meals Plaintiff purchased is not the type of sensitive information protected by the California Constitution. Indeed, Plaintiff concedes that she freely shared similar information with Facebook, TikTok, and Snap, which means she could not have reasonably expected it to be private. Nor does the alleged disclosure of that information for advertising purposes constitute the "egregious breach of social norms" required to state a constitutional privacy claim. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). To hold otherwise would make every commercial online interaction a constitutional issue.

The Complaint alleges that Huel used standard website technologies for advertising purposes and that those technologies transmitted her name, email address, and information about the Huel meals she purchased. Plaintiff had already provided most of that identifying information to the same third parties she claims received it. Yet under the regulation urged by Plaintiff's lawyers, Huel's collection and transmission of the same data Plaintiff freely shared across the internet is wiretapping, unlawful eavesdropping, computer fraud, or a constitutional invasion of privacy. Plaintiff's lawyer's proposed regulation would make it impossible for businesses to monitor website traffic or advertise online while doing nothing to protect consumers' private data. Plaintiff's claims should be dismissed in their entirety.

## RELEVANT FACTUAL BACKGROUND

### A. Huel and Its Products

Huel Ltd. is a U.K.-based food company founded by Julian Hearn in his garage in England. Hearn sold his profitable medical publishing company to start a company with a mission to do the right thing for the planet. Pursuant to this philosophy, Huel makes nutritionally complete, affordable food from sustainable, plant-based ingredients. It sells products through the Website (huel.com) and uses standard analytics and advertising technologies.

### B. Plaintiff's Claims

Plaintiff alleges that "on or around June 11, 2025, Plaintiff navigated to Defendant's Website . . . to purchase four hot & savory meal packs and seven hot & savory meal cups." (FAC ¶ 8.) Plaintiff does not otherwise describe her browsing activity, such as what webpages she viewed, what buttons she clicked, whether she used search terms, or what products she searched for, but she asserts that she "expressly rejected" "tracking" on the Website. (*Id.*)

Plaintiff alleges that she maintains Facebook, TikTok, and Snapchat accounts, and that she shared "her full name, date of birth, phone number, and email address" with them. (*Id.* ¶ 7.) She used the same device to access the Website and her social media accounts. (*Id.*) Plaintiff claims that Huel used tracking technologies provided by Meta, TikTok, and Snapchat to intercept and transmit her communications to those companies, and that Huel aided those companies in intercepting or recording the communications. (*E.g.*, ¶¶ 1, 6. Plaintiff, however, identifies no "communications" that were purportedly intercepted or recorded. Instead, the information allegedly transmitted included her identity, contact information, and information about the products she purchased. *Id.* ¶ 8; *see also id.* ¶ 83 ("Meta received at least the customer's name, email, location, and purchase information"); ¶ 120 ("Meta receives . . . hashed email (i.e., PII), payment event details, and item details"); ¶ 124 ("TikTok intercepts hashed email and product details"); ¶ 153 ("identities and information related to their purchase on the Website").) The Complaint does not allege that Plaintiff's credit card number or other financial account information was transmitted.

Plaintiff alleges that Huel incorporated these technologies for "marketing, advertising, and analytics purposes." (*Id.* ¶ 12; *see also id.* ¶ 8 (alleged disclosures "were done intentionally for

targeted advertising purposes"); ¶ 153 ("This confidential information is then monetized for targeted advertising purposes").) Indeed, the Complaint itself describes third-party tracking technologies as technologies Huel uses for "targeted advertising and website performance purposes." (*Id.* ¶ 4.) Plaintiff does not allege that Huel used the information at issue for a criminal or tortious purpose.

Plaintiff brings causes of action under the Wiretap Act, CIPA §§ 631 and 632, CDAFA, and the California Constitution.

## LEGAL STANDARD

A complaint should be dismissed for lack of standing where the pleading itself fails to allege facts that affirmatively and plausibly suggest that the plaintiff has standing to sue. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122–23 (9th Cir. 2010). A complaint should be dismissed for failure to state a claim where, as here, the plaintiff has failed to allege facts that would establish any cognizable legal claim against that defendant. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while the Court must accept all well-pleaded facts as true for purposes of a Rule 12(b)(6) motion, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Id*. at 677–79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## ARGUMENT

### I. PLAINTIFF LACKS STANDING BECAUSE SHE WAS NOT INJURED

Plaintiff's claims should be dismissed in their entirety because she does not allege that Huel's use of ordinary website analytics harmed her. Plaintiff visited the Website to buy food. She alleges that tracking technologies transmitted basic identifying and contact information and information about the Huel products she viewed or purchased. (FAC ¶¶ 83, 118–20, 121–22, 151.) She does not allege that anyone obtained her private correspondence, financial account

information, search terms, messages, or other sensitive communications. She does not allege identity theft, financial loss, loss of access to her data, damage to her device, or any other tangible consequence.

Article III requires more. A federal court may resolve only "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (internal quotation omitted). A plaintiff must therefore allege an injury that is "concrete, particularized, and actual or imminent." *Id*. at 423. A statutory violation alone is not enough. *Id.* at 426. Where, as here, the asserted injury is an invasion of privacy, the alleged harm must bear a "close relationship" to a harm traditionally recognized as actionable at common law. *Id.* at 424–25.

The Ninth Circuit's recent decision in *Popa* makes clear that routine tracking on a commercial website does not satisfy that requirement. There, Microsoft's tracking technology allegedly collected the plaintiff's device and browser information, mouse movements, screen swipes, text inputs, and scrolling activity while she visited a commercial website. *Id.* at 786–87. The Ninth Circuit nevertheless ordered the privacy claims dismissed for lack of standing because the plaintiff failed to identify any "embarrassing, invasive, or otherwise private information" that had been collected. *Id.* at 791. The Court explained that observing a consumer's movements through a commercial website is more akin to a store employee observing how customers move through a store than an actionable invasion of privacy. *Id.* at 791–93. Without allegations that the tracking revealed something private, there was no concrete injury. *Id.* at 791.

Plaintiff alleges even less here. She alleges that the tracking technologies transmitted basic contact information and information about the products she purchased on the Website. (FAC ¶¶ 83, 118–20, 121–22, 151.) Nothing about buying food from Huel reveals the type of "embarrassing, invasive, or otherwise private information" necessary to establish a concrete privacy injury under *Popa*. *See Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, 2026 WL 1495202, at *4–7 (N.D. Cal. May 28, 2026) (dismissing claims for lack of injury from disclosure of browsing information that did not reveal "embarrassing or sensitive data" and distinguishing cases involving "medical and health information"). And Plaintiff alleges no separate consequence from the purported disclosure. She does not claim that anyone misused her identity, took money from her, contacted her because

of the information, or caused her to spend a dollar. Her theory is simply that information about an ordinary commercial transaction was collected and used for targeted advertising. (FAC ¶ 153.) That is precisely the type of alleged statutory violation that *TransUnion* holds cannot, standing alone, open the doors to federal court.

Article III does not permit Plaintiff to manufacture a federal case out of an alleged statutory violation that caused her no concrete harm. Because Plaintiff does not plausibly allege that the challenged conduct revealed sensitive or private information, caused economic harm, or otherwise injured her in any concrete way, she lacks standing. All of her claims should be dismissed.

## II. PLAINTIFF'S WIRETAPPING CLAIMS FAIL BECAUSE HUEL WAS A PARTY TO THE COMMUNICATIONS

The Wiretap Act prohibits the intentional interception of wire, oral, or electronic communications. 18 U.S.C. § 2511. CIPA § 631(a), California's analogue to the federal Wiretap Act, similarly prohibits the unauthorized interception of the contents of electronic communications. Cal. Penal Code § 631(a). Plaintiff nevertheless seeks to impose liability under these wiretapping statutes based on Huel's routine use of website analytics and advertising technologies.

Both of Plaintiff's wiretapping claims are facially defective because Huel was a party to the alleged communications. The Wiretap Act expressly permits "a party to the communication" to intercept it unless the interception was made "for the purpose of committing any criminal or tortious act." 18 U.S.C.A. § 2511(2)(d); s*ee also Doe I,* 741 F. Supp. 3d at 842 (dismissing Wiretap Act claim where "the health care providers choose to install Google source code on their web properties" because it "must mean the providers consented to the operation of Google source code"). Like the Wiretap Act, CIPA also contains "an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not." *Byars*, 656 F. Supp. 3d at 1065 (*quoting In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020)); *see also id*. at 1068 (dismissing CIPA claim where "Defendant uses a third-party vendor to record and analyze its own data in aid of Defendant's business, . . . which makes the third-party an extension of Defendant's website, not a third-party eavesdropper" (cleaned up)). Huel cannot unlawfully eavesdrop on communications Plaintiff made *to Huel* through its Website.

Plaintiff's own allegations establish that Huel was "a party" to the communications at issue. She defines the alleged communications as the transmission of information to the Website and her "interactions" with the Website. (FAC ¶ 150.) Because Huel was a party to those communications, there cannot be any violation of the Wiretap Act unless Plaintiff alleges that Huel intercepted them for a "criminal or tortious purpose that is separate and independent from the act of the recording" or interception itself. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (dismissing Wiretap Act claim where plaintiffs "reus[e] the same criminal purpose . . . as both the purpose of the civil RICO claim and the independent criminal or tortious purpose of § 2511(2)(d)"). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Id.* (internal citation omitted).

Plaintiff's allegation that Huel intercepted the communications "for targeted advertising purposes" is fatal to her claims. (FAC ¶ 151.) Courts regularly dismiss Wiretap Act claims based on the use of tracking technology for advertising or financial gain. *See, e.g.*, *Doe I*, 741 F. Supp. 3d at 843 n.4 (dismissing Wiretap Act claim where Google's purpose "has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (same); *Zocco v. Nelnet, Inc.*, No. 25-cv-04470-NW, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (same, explaining tracking technology was allegedly used for "financial gain" rather than to commit a crime or tort). Plaintiff alleges that Huel used the information for targeted advertising, an ordinary commercial purpose, not to commit a crime or tort. Plaintiff's CIPA aiding-and-abetting theory also fails. Plaintiff alleges that Huel used Meta's, TikTok's, and Snap's tracking technologies to analyze activity on the Website and improve its advertising. (*E.g.,* FAC ¶¶ 83, 85, 99.) But using third-party technology to "record and analyze [a website's] own data in aid of [its] business" makes the provider an "extension" of the website, not a "third-party eavesdropper." *Byars*, 656 F. Supp. 3d at 1068. There is therefore no underlying CIPA violation by third parties that Huel could have aided and abetted.

Because Plaintiff's own allegations establish that Huel was a party to the communications and acted for a commercial purpose, her Wiretap Act claim fails. And because those same

allegations describe the third-party vendors as tools Huel used for its own business purposes, rather than third-party eavesdroppers, her CIPA § 631 claim fails as well.

## III. PLAINTIFF'S WIRETAP ACT AND CIPA § 631 CLAIMS FAIL BECAUSE NO ACTUAL COMMUNICATION WAS INTERCEPTED

Both Plaintiff's wiretapping claims also fail because she does not allege that Huel intercepted anything she communicated. She does not allege, for example, that Huel transmitted a search she entered or any other message she sent. She alleges only that Huel transmitted information identifying her and the webpages she visited, such as her contact information and URLs reflecting products she viewed or added to her cart. (FAC ¶¶ 116–18, 121.) That distinction matters because the wiretap statutes protect the substance of a communication, not basic information identifying who communicated or where the communication went.

The Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Plaintiff alleges that Huel shared information about who she was and what pages she viewed, not anything she said or typed, such as a search term. *Zynga* forecloses that theory. 750 F.3d at 1106 (dismissing Wiretap Act claim and holding that user's Facebook ID and webpage URL were not "contents" of communications because they constituted only "identification and address information"). Put simply, a person's name and address may identify a communication, but they do not reveal what the person actually said. *See id.* at 1107–08. Courts apply the same distinction under CIPA § 631(a). *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (dismissing Wiretap Act and CIPA claims and applying the Wiretap Act's definition of "contents" to a CIPA § 631(a)); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (same); *Ramos v. Gap, Inc.*, No. 23-CV-04715-HSG, 2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025) (dismissing CIPA claim and explaining the question is whether the information allegedly intercepted was "information *about* a user's communication" or "the communication itself." (quoting *Zynga*, 750 F.3d at 1107)).

Plaintiff alleges Huel transmitted her name, email address, physical address, phone number, and URLs reflecting products she viewed or added to her cart. (FAC ¶¶ 116–18, 121.) *Zynga* is directly on point. There, plaintiffs alleged that Facebook and Zynga transmitted a user's Facebook

ID and the URL of the webpage the user was viewing. 750 F.3d at 1108. The Ninth Circuit affirmed the dismissal of the Wiretap Act claim because that information was more like "the outside of an envelope" than "its contents." *Id.* The Ninth Circuit emphasized that alleging disclosure of "personally identifiable information" and the address of a webpage was "not equivalent to an allegation that they disclosed the contents of a communication." *Id.* at 1107. Courts applying *Zynga* routinely dismiss claims based on the transmission of the same kinds of identifying and browsing information alleged here. *See Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024) (dismissing CIPA claim because disclosure of usernames and passwords are not the "contents" of communication under *Zynga*); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (same for usernames, passwords, and geographic location); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (same for name, address, pages viewed, date and time of visit, IP address, location, browser type, and operating system); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-CV-01119-DC-CKD, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (same for address, telephone number, email address, zip code, and "button clicks").

For example, in *In re Apple Data Privacy Litigation*, plaintiffs alleged that Apple collected users' searches for specific apps and stock symbols. 824 F. Supp. 3d 888, 900 (N.D. Cal. 2026). The court dismissed those allegations because searching for an app or stock by name was "more akin to browsing apps and stocks than exchanging a user's substantive information." *Id.* at 901. The court distinguished search terms such as "roommate," "LSAT," "screen time," and "used cars," which could reveal a user's "inner thoughts and interests." *Id.* Plaintiff alleges only the former here: information showing which Huel products she browsed, not any search term, message, or other expression of her thoughts or ideas. (FAC ¶¶ 116–18, 121.) Under *Zynga*, that is not wiretapping, and her Wiretap Act and CIPA § 631(a) claims should be dismissed.

## IV. PLAINTIFF'S CIPA § 632 CLAIM FAILS BECAUSE SHE DOES NOT PLAUSIBLY ALLEGE ANY CONFIDENTIAL COMMUNICATION WAS INTERCEPTED

Plaintiff's CIPA § 632 claim should similarly be dismissed because Plaintiff has not plausibly alleged that Huel intercepted a confidential communication. Section 632(a) prohibits

intentionally eavesdropping upon or recording a "confidential communication" without the consent of all parties to the communication, Cal. Penal Code § 632(a), but expressly excludes communications where the parties "may reasonably expect that the communication may be . . . recorded," *id.* § 632(c). Thus, electronic communications that are inherently recorded are not confidential. *See Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (Mem.) (affirming dismissal of § 632 claim because text messages that are "by nature recorded" are not confidential communications); *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 898–99 (N.D. Cal. 2026) (dismissing § 632 claim because communications between users' devices and Apple's servers were necessarily recorded to process users' requests). Consistent with that rule, courts routinely reject § 632 claims involving ordinary internet communications. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (dismissing § 632 claim because "Internet-based communications . . . can easily be shared by, for instance, the recipient(s) of the communications."); *In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) (same for email communications); *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (rejecting § 632 challenge because sexually explicit Yahoo chats were not confidential).

Opting out of tracking does not transform ordinary interactions with a commercial website into confidential communications. In *Apple*, plaintiffs alleged that they expressly disabled Apple's "Share [Device] Analytics" setting and therefore expected that Apple would not collect their usage data. 824 F. Supp. 3d at 899. The court nevertheless dismissed the § 632 claim because that expectation was objectively unreasonable. *Id.* Apple's applications necessarily had to receive and record information from users' devices to respond to their requests. *Id.* And that remained true even for referral URLs and search terms: Apple had to record the requested URL or search term to provide the information the user requested. *Id.* Thus, disabling data sharing did not overcome the presumption that those ordinary internet communications were not confidential. *Id.*

Similarly, here Plaintiff does not allege that Huel recorded a private conversation or message that she reasonably expected would remain unrecorded. She alleges ordinary interactions with the Website, including information reflecting which pages and products she viewed. (FAC ¶¶ 116–18, 121.) As in *Apple*, the Website necessarily had to receive and process Plaintiff's requests

to display the pages and products she asked to view. Her allegation that she rejected tracking does not transform those ordinary Website interactions into confidential communications.[2]

Because Plaintiff does not plausibly allege that Huel intercepted any confidential communication, her § 632 claim should be dismissed.

## V. PLAINTIFF'S CDAFA CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE UNAUTHORIZED ACCESS, TAKING OF HER DATA, OR RESULTING LOSS

Plaintiff's CDAFA claim fails for several independent reasons. The CDAFA provisions she invokes require, among other things, that Huel accessed or used a computer, computer system, or computer network "without permission," took or used data "from" such a system, altered or damaged data or a computer system, provided a means of unauthorized access, or introduced a "computer contaminant." Cal. Penal Code §§ 502(c)(2)–(4), (6)–(8); (FAC ¶¶ 194–98). And to bring a private action, Plaintiff must have suffered "damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1); (FAC ¶¶ 201–03). Plaintiff alleges none of these things. She alleges that she voluntarily visited the Website, that Huel received information generated through her interactions with the Website, and that Huel used that information for advertising. (FAC ¶¶ 7–8, 196–201.) That is not computer hacking.

First, Plaintiff does not plausibly allege that Huel accessed her computer or data without permission. Sections 502(c)(2)–(4), (6)–(7) require unauthorized access to or use of a computer, computer system, or computer network. Cal. Penal Code §§ 502(c)(2)–(4), (6)–(7). Plaintiff alleges Huel used tracking technologies on the Website and collected information about Plaintiff's interactions with that Website. (FAC ¶¶ 110, 116.) That is not unauthorized access to Plaintiff's computer or data stored on it. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (dismissing CDAFA claim because "Plaintiff has not alleged that Defendant accessed *her computer or network* without permission" (emphasis added)); *see also In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sep. 20, 2011)

---

[2] Plaintiff's allegations further undermine any claim of confidentiality. She admits that she maintains accounts with Facebook, TikTok, and Snapchat and had already provided those companies with her "full name, date of birth, phone number, and email address." (FAC ¶ 7.) She cannot plausibly claim that this same identifying information was confidential from companies to which she had already provided it.

(dismissing CDAFA claim because installing trackers on apps was not accessing computers without permission). Nor does her conclusory assertion that she "own[ed]" the data establish otherwise. (FAC ¶ 195.) Plaintiff does not allege facts showing that she owned Huel's records of her activity on the Website or that Huel obtained those records from her computer. Section 502(c)(2) requires both; Plaintiff cannot satisfy those requirements simply by labeling the information "her data."

Second, Plaintiff does not plausibly allege the "computer contaminant" required by Section 502(c)(8). Plaintiff alleges that Huel used standard website technologies for their intended purpose, not that it introduced a virus, worm, or other malicious code onto her computer. (FAC ¶ 197.) CDAFA defines a "computer contaminant" as computer instructions designed to "modify, damage, destroy, record, or transmit information" without the owner's permission and identifies "viruses or worms" as examples. Cal. Penal Code § 502(b)(12). Plaintiff alleges no facts showing that these ordinary Website technologies functioned like malicious code or disrupted the operation of her computer. Instead, she alleges that they collected Website information for advertising. *See iPhone Application*, 2011 WL 4403963, at *13 (CDAFA's computer contaminant definition "appears to be aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system" rather than at-issue trackers or cookies).

Finally, Plaintiff does not allege the "damage or loss" required for a private CDAFA action. Cal. Penal Code § 502(e)(1); (*see* FAC ¶¶ 186, 201–03). To state a claim, Plaintiff must plausibly allege "economic harm or actual injury." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (dismissing CDAFA claim because mere invasion of statutory rights insufficient). An intangible invasion of privacy is not enough without allegations that the information "had value before [the defendant] harvested it, diminished in value once [the defendant] accessed it, or was entirely unavailable to the plaintiffs after [the defendant] collected it." *Id*. Plaintiff alleges none of these things. She does not allege that her data diminished in value, became unavailable to her, or otherwise caused her any economic loss. Instead, she alleges only that her data is "valuable" and that Huel will "unjustly profit" from it. (FAC ¶¶ 199, 201.) These conclusory allegations are insufficient. *See Dawson v. Meta Platforms, Inc.*, No. 26-cv-00751-RFL, 2026 WL 2137134, at *7

(N.D. Cal. July 23, 2026) (dismissing CDAFA claim where "[a]bsent from the complaint is any explanation of what loss Plaintiffs experienced and what benefit Defendants allegedly received").

Plaintiff's allegations thus describe a website operator receiving information generated from a consumer's use of its website and using that information for advertising. Plaintiff does not plausibly allege unauthorized access to Plaintiff's computer, the taking of data from her computer, introduction of a computer contaminant, or any resulting damage or loss. Her CDAFA claim should be dismissed.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

"The California Constitution sets a high bar for establishing an invasion of privacy claim." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (cleaned up). Plaintiff "must demonstrate three elements: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014) (quoting *Hill*, 7 Cal. 4th at 39–40). Here, even assuming Plaintiff opted out of tracking, lack of consent is not sufficient to state a privacy claim. *Yahoo Mail*, 7 F. Supp. 3d at 1041 (dismissing privacy claim because allegations that Yahoo scanned, stored, and disclosed Plaintiffs' email content were insufficient, explaining "in determining whether a plaintiff has satisfied the elements of the claim, a plaintiff's lack of consent does not matter so much as the nature of the information in which he or she alleges a privacy interest"). Plaintiff has failed to establish a legally protected privacy interest and a serious invasion of privacy. Thus, even assuming Plaintiff opted out of tracking, her claim still fails because she does not plausibly allege either a legally protected privacy interest or a serious invasion of privacy.

Plaintiff does not plausibly allege a legally protected privacy interest in the basic contact information and information about the meal packs she purchased. And, indeed, courts have recognized that no such privacy interest exists. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991–92 (2011) (affirming dismissal of privacy claim and finding no actionable invasion of privacy based on obtaining a customer's address without his knowledge or permission and using it

for marketing); *see also Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *5 (N.D. Cal. June 9, 2023) (distinguishing browsing history and related data as "far less personal" than information concerning medical history in allowing privacy claim based on latter).

Plaintiff's claim also independently fails because she does not allege a serious invasion of privacy. To establish this element, a plaintiff must allege conduct that is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. "[W]here the conduct amounts to 'routine commercial behavior,' the third element is not met." *Smith*, 754 F. Supp. 3d at 946. The alleged conduct here, routine commercial behavior, does not constitute a "serious invasion of privacy." *Hill*, 7 Cal. 4th at 40. For example, in *Folgelstrom*, the court affirmed dismissal of a privacy claim finding that obtaining a customer's address without his knowledge and using it to send advertisements was "not an egregious breach of social norms, but routine commercial behavior." 195 Cal. App. 4th at 992. And in *In re iPhone Application Litigation*, the court dismissed privacy claims based on the alleged collection and disclosure of substantially more sensitive information, including users' addresses, precise geographic locations, age, gender, zip code, and information about their activity within applications. 844 F. Supp. 2d 1040, 1063. Even assuming that information was transmitted without plaintiffs' knowledge or consent, the court held that its disclosure did not constitute an egregious breach of social norms, and that the plaintiff therefore could not bring a privacy claim. *Id.*; *see also Yahoo Mail*, 7 F. Supp. 3d at 1038 (dismissing privacy claims and collecting cases explaining that "[e]ven disclosure of very personal information" may not constitute an egregious breach of social norms).

Using ordinary information about an ordinary food purchase for advertising is routine commercial conduct, not an "egregious breach of social norms." Plaintiff's claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Huel respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

Dated: August 27, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: ______________________________
David H. Kwasniewski, Esq.

*Attorneys for Defendant Huel Ltd.*