**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave, Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EDEN MCKIE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HUEL LTD.,

Defendant.

Case No. 3:26-cv-00653-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT HUEL LTD.'S MOTION TO DISMISS**

Date: October 23, 2026
Time: 10:00 a.m.
Judge: Hon. Charles R. Breyer
Location: Courtroom 06, 17th Floor

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. PLAINTIFF HAS ARTICLE III STANDING ........ 2

II. HUEL'S "PARTY" STATUS DOES NOT INSULATE IT FROM LIABILITY ........ 5

III. PLAINTIFF ALLEGES HUEL INTERCEPTED HER COMMUNICATIONS ........ 8

IV. PLAINTIFF ADEQUATELY ALLEGES HER COMMUNICATIONS WERE CONFIDENTIAL UNDER § 632 ........ 10

V. PLAINTIFF ADEQUATELY ALLEGES HER CDAFA CLAIM ........ 12

VI. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES


**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2

*Brown v. Google LLC,* ("Brown I"), 525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 7

*Brown v. Google LLC,* ("Brown II"), 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... passim

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 10

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) .......... 2, 6, 9, 15

*Correia v. Lulu & Georgia, Inc.*, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .......... passim

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 9

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 3

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) .......... 10

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 .......... 15

*Gabrielli v. Haleon* US *Inc.*, ("Haleon"), 815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 2, 4, 8, 15

*Gabrielli v. Motorola Mobility LLC,* ("Motorola"), 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 2, 4, 6, 15

*Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522 (C.D. Cal. Mar. 31, 2026) .......... 11

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994) .......... 15

*In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 11

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)........ 8

*In re Facebook, Inc. Internet Tracking Litig. ("In r*e Facebook"),
956 F.3d 589 (9th Cir. 2020)........ passim

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)........ 9

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)........ 15

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026)........ passim

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)........ 5

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)........ 7

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........ 10

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026)........ 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........ 2, 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........ 7, 8

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025)........ 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)........ 6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)........ 8

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026)........ 4, 15

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024)........ 10

*Smith v. Rack Room Shoes, Inc.*,
("Smith I"), 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)........ passim

*Smith v. Rack Room Shoes, Inc.*,
(“Smith II”), 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 2, 7, 13

*Smith v. Rack Room Shoes, Inc.*,
(“Smith III”), 2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ........ 2, 8, 14

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 2

*Sussman v. Am. Broad. Co., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 7

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 10

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) ........ 4, 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 2, 3

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 12

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 11

*Vera v. O’Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 11

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 8, 9

**STATUTES**

Cal. Penal Code § 630 ........ 5

Cal. Penal Code § 631(a) ........ 6

Cal. Penal Code § 632 ........ 5, 10, 14

Cal. Penal Code § 502(b)(12) ........ 13

Cal. Penal Code § 502(c)(2) ........ 12

**INTRODUCTION**

Plaintiff Eden McKie ("Plaintiff") brings this action on behalf of herself and a putative class of consumers who used Defendant Huel Ltd.'s ("Huel") website, www.huel.com (the "Website"), to browse and purchase nutritional meals and had their electronic communications intercepted and disclosed to Meta Platforms, Inc., TikTok, Ltd., and Snap Inc. (the "Third Parties") without their knowledge or consent. First Amended Complaint ("FAC"), ECF No. 17 at ¶¶ 1–6.

Huel's Motion to Dismiss ("Mot.") rests on a single, repeated premise that misstates the FAC's allegations: that Huel did nothing more than deploy "standard website technology." Mot. at 1. Not so. This case is about a company that told its customers one thing and did the complete opposite. *See generally* FAC ¶¶ 17–27 (representations of anonymity), ¶¶ 110–128 (third-party disclosures). Defendant represented "irrespective of whether a consumer accepts or rejects cookies" that its targeting cookies "do not store directly personal information." FAC ¶ 22, Figs. 3–6. Defendant also purportedly offered consumers the ability to "reject" or limit cookies. FAC ¶ 20–21, Figs. 1–2. Those representations were false, and the choice they offered illusory: Huel configured the third-party tracking technologies from the Third Parties to intercept and transmit consumers' personally identifiable information ("PII")—including their names, email addresses, and the specific products they viewed and purchased—despite expressly warranting any tracking on the Website was anonymous. FAC ¶¶ 17–27, Figs. 3–4, 6. Huel did this to enrich itself and the Third Parties through targeted advertising, and in doing so, enabled the Third Parties to use the data for their own profiling and commercial gain. FAC ¶¶ 52–128.

This is precisely the harm the Ninth Circuit warned against in *In re Facebook, Inc. Internet Tracking Litig.* ("*In re Facebook*"), 956 F.3d 589 (9th Cir. 2020). "[T]he critical fact [is] that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *Id.* at 603. That "critical fact" recurs throughout the FAC: Huel induced Plaintiff's reasonable expectation of privacy by warranting tracking was done anonymously rendering Huel's interception tortious, such that the resulting intrusion is an egregious breach of social norms.

Courts across this Circuit have denied dismissal of materially identical claims. *See e.g. Smith v. Rack Room Shoes, Inc.* ("*Smith I*"), 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) (CIPA §§ 631–32, invasion of privacy); *Smith v. Rack Room Shoes, Inc.* ("*Smith II*"), 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) (CDAFA, ECPA); *Smith v. Rack Room Shoes, Inc.* ("*Smith III*"), 2026 WL 183852 (N.D. Cal. Jan. 23, 2026) (CIPA § 631 (use), ECPA, CDAFA); *Gabrielli v. Haleon US Inc.* ("*Haleon*"), 815 F. Supp. 3d 852 (N.D. Cal. 2025) (CIPA § 631, invasion of privacy); *Gabrielli v. Motorola Mobility LLC* ("*Motorola*"), 2025 WL 1939957 (N.D. Cal. July 14, 2025) (CIPA § 631, invasion of privacy); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) (ECPA, CIPA §§ 632, invasion of privacy); *Correia v. Lulu & Georgia, Inc.*, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) (CIPA §§ 631–32). This Court should do the same.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Huel argues "Plaintiff's claims should be dismissed in their entirety because she does not allege that Huel's use of ordinary website analytics harmed her." Mot. at 5. That is wrong.

To establish a concrete and particularized injury, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)) (cleaned up). Relevant here, the Supreme Court has recognized, "disclosure of private information[] and intrusion upon

seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook*, 956 F.3d at 598 (citations omitted); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (same). This "right to privacy" includes an "individual's control of information concerning his or her person." *In re Facebook*, 956 F.3d at 598.

Here, Plaintiff has adequately alleged a cognizable privacy interest sufficient to confer standing. *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *2 (N.D. Cal. May 27, 2026) (where a defendant warrants "its targeting cookies 'do not store directly personal information, but are based on uniquely identifying your browser and internet device'" the plaintiff had a "reasonable expectation in anonymized data sharing"); FAC ¶ 20 (Huel "promises customers that it will keep their personally identifiable electronic communications confidential" and purports to "offer[] consumers an opportunity to reject/limit cookies"); ¶ 22 (Huel "explicitly warrants the tracking technologies it installed on the Website do not store its customers' personal information"); ¶ 24 ("Despite Defendant's assurances that none of the Tracking Technologies share personal information, . . . Defendant enables third parties . . . to [] track consumers . . . Website browsing activities and eavesdrop on users' private communications on the Website."); Figs. 3–6. Accordingly, Plaintiff and members of the putative class had a reasonable expectation of privacy in "anonymized tracking" based on Huel's own representations irrespective of whether a consumer accepted or rejected tracking. FAC ¶ 24; *Spring Fertility*, 2026 WL 1483490, at *2.

Huel's failure to adequately disclose third-party tracking, therefore (1) deprived Plaintiff of her ability to control information regarding her person by expressly warranting any tracking was anonymous, (2) constitutes a disclosure of private information sufficient to confer standing, and (3) constitutes common law public-disclosure-of-private-facts tort. FAC ¶¶ 17–27. A number of courts throughout this Circuit are in accord. *Correia*, 2026 WL 2343093, at *4 ("while the browsing data at issue 'may not involve the types of information in which users have an unqualified expectation of privacy,' Defendant affirmatively informed users they could decline or opt out of that form of

information collection . . . This affirmative action . . . creates 'a reasonable expectation of privacy with respect to that information.'"); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("The Restatement (Second) of Torts (which *Popa* cited approvingly, *see* 153 F.4th at 791) explains that misrepresenting how private information will be used can constitute such an invasion of privacy"); *Motorola*, 2025 WL 1939957, at *6 ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Haleon*, 815 F. Supp. 3d at 863–67 (same).

Huel's reliance on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) and *Torres v. Seatgeek, Inc.*, 2026 WL 1495202 (N.D. Cal. May 28, 2026) is misplaced. Neither carries the weight Huel tries to assign it.

*Popa v. Microsoft Corp.* was dismissed because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information" captured via session-replay technologies.[1] *Popa*, 153 F.4th at 791. The Ninth Circuit likened the session replay technology to a clerk "observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* The Ninth Circuit did not adopt a per se rule. Rather, it emphasized "the individual circumstances giving rise to the plaintiffs' alleged injuries" and refused to displace *In re Facebook*. *Id.* at 794. More importantly, *Popa* did not involve a defendant that promised anonymity and disclosed personal information in spite of that promise. That is precisely the conduct the Ninth Circuit recognized gives way to a reasonable expectation of privacy. *In re Facebook*, 956 F.3d at 602 ("Plaintiffs have plausibly alleged that Facebook set an expectation that . . . data would not be collected, but then collected it anyway."). Indeed, in *Correia v. Lulu & Georgia, Inc.*, the court acknowledged that browsing data "may not involve the types of information in which users have an unqualified expectation of privacy," but held that a defendant's "affirmatively inform[ing] users they could decline or opt out of that form of information collection" "distinguishes itself from *Popa* and creates

[1] "The tracking technologies are also distinguishable, both in users' interactions with them and their capabilities. . . . Indeed, the session-replay technology was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was ***only alleged to be used by the owner of that website***." *Haleon*, 815 F. Supp. 3d at 867.

a reasonable expectation of privacy with respect to that information" which the defendant then collected anyways. *Correia,* 2026 WL 2343093, at *4. Here, Huel's conduct is even more egregious because it represented tracking was done anonymously irrespective of whether a consumer accepted or rejected cookies. FAC ¶¶ 17–27. *Torres v. Seatgeek, Inc.* confirms Plaintiff's position. The *Torres* court recognized the carve-out Plaintiff seeks to apply here: a "highly offensive intrusion" arises where a defendant "disregards consumers' privacy choices" while "holding itself out as respecting them." *Torres*, 2026 WL 1495202, at *3. That is precisely what Plaintiff alleges Huel did—it held itself out as tracking anonymously and honoring opt-outs, then disregarded both. FAC ¶¶ 5–6, 8, 12–13, 17–27, 110, 116, Figs. 3–4, 6. Accordingly, Plaintiff has established Article III standing.

## II. HUEL'S "PARTY" STATUS DOES NOT INSULATE IT FROM LIABILITY

Huel next contends that its wiretapping claims fail because it was a "party" to the communications and its purpose was ordinary advertising rather than anything tortious. Mot. at 7–9. That is wrong.

As a preliminary matter Huel's argument conflates the ECPA's one-party consent statute with CIPA which is an all-party consent statute.[2] *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("the California Supreme Court would interpret Section 631(a) to require the prior consent of ***all*** parties to a communication") (emphasis added); *Brown v. Google LLC* ("*Brown II*")*,* 685 F. Supp. 3d 909, 937 n. 33 (N.D. Cal. 2023) (the defendant's "argument is problematic for another reason—it creates a workaround to CIPA's two-party consent rule. Cal. Penal Code § 630"). Here, the FAC is replete with allegations Plaintiff did not consent to Huel's conduct (FAC ¶¶ 6, 8, 12–13, 25, 84, 96, 109–110, 165, 169, 179, 209), nor could she because Huel expressly warranted tracking was done anonymously irrespective of whether a consumer accepted or rejected tracking such that any consent was effectively meaningless. FAC ¶¶ 8, 17–27, Figs. 3–4, 6; *accord Spring Fertility*, 2026 WL 1483490, at *2.

[2] Cal. Penal Code Section 632 is also an all-party consent statute.

Simply put, because CIPA demands the consent of *all* parties, Huel's consent to the Third Parties' presence on the Website is legally insufficient to invoke the party exception. Huel's interception and disclosure would only have been permitted to intercept Plaintiff's communications ***if Plaintiff herself also consented***—which she did not. *See Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (explaining that CIPA's purpose is to protect speakers from the "simultaneous dissemination to an unannounced second auditor whether that auditor be a person or mechanical device"). Plaintiff's allegations make unequivocally clear that she never provided such consent. *See e.g.*, FAC ¶ 8 ("Neither Defendant nor the Third Parties procured Plaintiff's consent prior to these interceptions, nor was Plaintiff on notice of the fact that such interceptions were occurring—in fact, Plaintiff expressly rejected such tracking"), *see also* FAC ¶¶ 17–27.

The Ninth Circuit's precedent is clear: "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception," because permitting the unauthorized duplication and forwarding of an unknowing user's information "would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *In re Facebook*, 956 F.3d at 608. In any event, § 631(a) independently imposes liability on a defendant who ***aids*** a third party in tapping a communication; such that Defendant's enabling of the Third Parties' interception is sufficient to state a claim. *See Casillas*, 812 F. Supp. 3d at 1031 ("Defendant argues it cannot be liable under the second clause of Cal. Pen. Code § 631(a) under the 'party exception' which exempts an entity that is a 'party to the communication' from liability . . . . However, Cal. Pen. Code § 631(a) also prohibits a person from aiding or conspiring with any person to tap a communication without consent."); *Motorola*, 2025 WL 1939957, at *11 (rejecting the party-exception argument where cookies collected the plaintiff's activity beyond the defendant's own site). Plaintiff alleges precisely that: Huel embedded the Meta, TikTok, and Snap tracking technologies to intercept Plaintiff's communications and "instantaneously transmit those communications" to the Third Parties and Huel "aids, agrees with, employs, or otherwise enables" those parties to eavesdrop for their own independent purposes. FAC ¶¶ 6–8, 11–13, 52–84 (Meta), 85–95 (TikTok), 97–109 (Snap), 113–14, 150–52.

The crime-tort exception applies "where the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Brown v. Google LLC* ("*Brown I*"), 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Smith II*, 2025 WL 2210002, at *4 (citing *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *4 (C.D. Cal. Jan. 13, 2025); *Sussman v. Am. Broad. Co., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

Here, Plaintiff alleges that Huel intercepts and discloses communications to Third Parties for a number of unlawful and tortious purposes including "invasion of privacy and associating the content of Plaintiff's and Class members' electronic communications with preexisting consumer profiles and using the contents of their electronic communication." FAC ¶ 156. A number of courts have recognized that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception," because it "violate[s] state law, including [the] CDAFA, intrusion upon seclusion, and invasion of privacy." *Brown I*, 525 F. Supp. 3d at 1067; *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) ("contrary to Lemonaid's argument that any alleged interception was for Lemonaid's sole benefit and thus still within the party exception, Plaintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (crime-tort exception applies "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

An additional basis for the application of the crime-tort exception is Huel's disclosure of Plaintiff's "personally identifiable information for advertising, in contradiction the commitments it made" in its cookie banner. *Smith II*, 2025 WL 2210002, at *5 ("Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction [to] the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy

beyond the act of intercepting the information alone."); *Smith III*, 2026 WL 183852, at *2 ("Rack Room contends that the Wiretap Act's crime-tort exception does not apply, because: (1) only the third parties' purpose should be considered and not Rack Room's; (2) Plaintiffs fail to allege an independent tortious purpose separate from the interception itself; and (3) where a defendant's primary motivation is to make money, the exception is inapplicable. Each of these arguments fails").

Here, Huel was legally obligated to honor its privacy representations when using or exploiting its customers' personal information. Despite that obligation, Huel chose to assist Third Parties with intercepting electronic communications "in a manner that exceeds what Defendant promised Plaintiff and Class members on its Website." FAC ¶ 156. By doing so, Huel facilitated the interceptions for a tortious and unlawful purpose. Furthermore, "commercially exploiting unlawfully obtained information is [not] 'licit' merely because it is profitable. Put simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025).

## III. PLAINTIFF ALLEGES HUEL INTERCEPTED HER COMMUNICATIONS

Huel argues that Plaintiff's "wiretapping claims also fail because she does not allege that Huel intercepted anything she communicated." Mot. at 9. That is wrong.

Courts interpret "content" under the CIPA and the ECPA as "the intended message conveyed by the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024). Courts within the Ninth Circuit have agreed that "content" includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d at 902 ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA."); *Haleon*, 815 F. Supp. 3d 852, 871 ("search terms and descriptive URLs . . . constitute 'contents.'"); *Yoon*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.").

Here, Plaintiff alleges Huel enabled Tracking Technologies to intercept and disclose "both the 'characteristics' of individual's communications with its Website (their IP addresses, Facebook ID, User-IDs, cookie identifiers, device identifiers, emails, and phone numbers) and the 'content' of these communications (the buttons, links, pages, and tabs they click, and view related to the shopping and products sought from Defendant)." FAC ¶ 115. Further, Plaintiff alleges that "Defendant discloses the URLs and page titles of every page that they visit, including during the checkout process" and provides figures showing the disclosed URLs. FAC ¶ 118. Such information qualifies as the "contents" of a communication. *See, e.g.*, *Casillas*, 812 F. Supp. 3d at 1029 (holding that "information such as Plaintiff's and Website users' personal information 'including search queries,' 'products searched for,' 'user interests,' and 'browsing habits' are sufficient to allege that a defendant transmitted content information as required to state a claim under the Federal wiretap Act."); *Smith I*, 2025 WL 1085169, at *4; *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) ("[A] URL disclosing a search term or similar communication made by the user could constitute a communication under the statute.") (cleaned up); *Brown II*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s] are distinct from the IP addresses discussed in *Zynga* . . . . The URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits. So too here.") (cleaned up). Moreover, because Plaintiff affirmatively provided Huel with her email address, phone number, name, and address, such information can also be considered contents. *Compare* FAC ¶ 120 ("On the checkout page, Plaintiff and other users of Defendant's Website are prompted to enter their email address, phone number, name, and address."); *with In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1004 (N.D. Cal. 2024) (finding "contents" were intercepted where information transmitted was "affirmatively provided by the website user to the website"); *Yoon* 2024 WL 5264041, at *5 ("Generally, customer information such as a person's name, address, and subscriber number or identity is record information, but it may be contents when it is part of the substance of the message conveyed to the recipient.").

## IV. PLAINTIFF ADEQUATELY ALLEGES HER COMMUNICATIONS WERE CONFIDENTIAL UNDER § 632

Huel next argues that "Plaintiff has not plausibly alleged that Huel intercepted a confidential communication" (Mot. at 10) because "electronic communications that are inherently recorded are not confidential." Mot. at 11. Not so.

"California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (quoting *Brown II*, 685 F.Supp.3d at 938). Simply put, "Section 632 makes no exception on its face for communications over the Internet, or in the 'Internet Age,' meaning that there is no requirement that Plaintiff allege something 'unique' about her particular Internet communications in order to make them private/confidential." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024). To the contrary, "[C]ourts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Correia*, 2026 WL 2343093, at *6 (citing *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024); *Smith I*, 2025 WL 1085169, at *5; *In re Facebook*, 956 F.3d at 601–03; *Brown II*, 685 F.Supp.3d 937–39 (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced)).

Under § 632, a communication is confidential if the individual has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002). Where—as is the case here—the Website expressly warrants targeting cookies "do not store directly personal information" there is an objectively reasonable expectation in *anonymized* data sharing. FAC ¶ 22, Fig. 6; *accord Spring Fertility Holding*, 2026 WL 1483490, at *2; *Correia*, 2026 WL 2343093, at *6. Plain and simple.

*Smith I* is instructive. There, the court held "Plaintiffs have adequately alleged a confidential communication," when their ***online shoe shopping habits*** were tracked because the website's

privacy policy said it would not be tracked in an identifiable manner. *Smith I*, 2025 WL 1085169, at *5. "Plaintiffs have alleged that they had a reasonable expectation of privacy in their personally identifiable browsing history as a result of the disclosures and promises in Rack Room's privacy policy, which can be read to promise that third parties would not intercept or use said bundled information. This is sufficient to satisfy the confidentiality requirement at this stage of the proceedings." *Id*. The same is true here. Plaintiff alleges she had an expectation that her online shopping session would not be tracked based on Huel's own representations. FAC ¶¶ 8, 17–27, Figs. 3–4, 6.

Huel's reliance on *In re Apple Data Privacy Litigation* is misplaced. Mot. at 11. There Judge Davila explained the plaintiffs' decision not to "share device analytics" did not create a reasonable expectation of privacy in ***first-party internet communications.*** *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 899 (N.D. Cal. 2026). However, four months later in *J.S. v. Spring Fertility Holdings, LLC* Judge Davila held an identical representation to the one Huel made here created a reasonable expectation that "personally identifying data would not be shared." *Spring Fertility*, 2026 WL 1483490, at *2. Even if the Court elects to find *In re Apple Data Privacy Litigation* persuasive, Plaintiff's 632 claims are adequately alleged under a theory of derivative liability. "In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability." *Smith I*, 2025 WL 1085169, at *5. Thus, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026).

"[T]o establish liability, [the defendant] must have knowledge of [the Third Parties'] breach of duty and must have provided substantial assistance." *Smith I*, 2025 WL 1085169, at *5. The court denied the motion to dismiss the CIPA § 632 claim reasoning:

> Plaintiffs adequately allege that Rack Room knew that Meta and Attentive's data collection had the purpose of tracking individually identifiable user habits, ***despite provisions of Rack Room's policy that created a contrary expectation.*** Furthermore, ***the allegation that Rack Room knowingly and affirmatively embedded Meta and Attentive's code into its website is sufficient to plead substantial participation***.

*Id.* at *5.

Here, Plaintiff plausibly alleges Huel is liable as an eavesdropper under Section 632 under a theory of derivative liability. *See e.g.* FAC ¶ 115 ("Defendant intentionally configured the Tracking Technologies installed on its Website to capture both the 'characteristics' of individual's communications with its Website . . . and the 'content' of these communications"); ¶ 116 ("Defendant installs these Tracking Technologies despite its understanding that its customers reasonably anticipate their identifiable information to be kept confidential and undisclosed").

## V. PLAINTIFF ADEQUATELY ALLEGES HER CDAFA CLAIM

Defendant argues that Plaintiff's CDAFA claim fails because she did not allege: (1) Huel "accessed her computer or data without permission", (2) there was no "computer contaminant", and (3) there was no "damage or loss." Mot. at 12–13. That is wrong

***First***, the CDAFA imposes liability on one who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." *Brown II*, 685 F. Supp. 3d at 939 (citing Cal. Penal Code § 502(c)(2)). "Access" means, among other things, to "cause output from" a computer's resources, and a "third-party code [that] instructed [a user's] browser to send [the user's] information to third-party servers . . . constitutes 'access' of that data." *Smith I*, 2025 WL 1085169, at *6; *accord Brown II*, 685 F. Supp. 3d at 939–40. Critically, "the California statute does not require unauthorized access[,] [i]t merely requires knowing access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Plaintiff alleges that Huel knowingly deployed the Third Party tracking technologies, which instructed her browser to transmit her data without permission, and did so even after she rejected the tracking. FAC ¶¶ 8, 11–13, 46–51; *Smith I*, 2025 WL 1085169, at *6 ("It is enough that Rack Room allegedly inserted third-party code into its website that allowed third parties to use technological means to access that data without permission").

***Second***, the CDAFA defines a "computer contaminant" as any set of computer instructions designed to "record, ***or*** transmit information" without the owner's permission, and expressly provides that the term is "not limited to" viruses and worms. Cal. Penal Code § 502(b)(12); FAC ¶¶ 46–51 (detailing how Tracking Technologies operate). Plaintiff alleges that the tracking technologies "self-propagate," "record and transmit data that would not otherwise be transmitted," and "usurp the normal operation" of her devices by supplanting her choices about how they are used and supports this with screenshots detailing Defendant's transmissions to the Third Parties. FAC ¶ 197, Figs. 8–11. Nothing more is required. Huel's contention that Plaintiff did not allege the Tracking Technologies "functioned like malicious code or disrupted the operation if her computer" disregards that the definition includes instructions designed to "record[] or transmit information" like the HTTP and GET requests here. *See e.g.* FAC ¶¶ 12–13, 46–51.

***Third***, economic injury stemming from unjust profit from data satisfies the damage-or-loss requirement. "California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable," and plaintiffs are "damaged by not having received a share of the allegedly unjust profits generated from their data"; a disgorgement theory therefore states a compensable "damage or loss." *Smith II*, 25 WL 2210002, at *3 (citing *In re Facebook*, 956 F.3d at 600); *accord Brown II*, 685 F. Supp. 3d at 940 (plaintiffs "have a stake in the value of their misappropriated data" and can "state an economic injury for their misappropriated data"). Plaintiff alleges precisely that: Huel caused Third Parties to "unjustly profit from Plaintiff and Class Members personal information and online activity," such that it would be inequitable to allow those parties to keep profits from her data. FAC ¶¶ 28–34, 199–204; *Smith II*, 2025 WL 2210002, at *3 ("Plaintiffs are damaged by not having received a share of the allegedly unjust profits generated from their data. That reading is also consistent with CDAFA's statutory purpose.").

***Finally***, to the extent Huel argues the CDAFA does not reach a defendant who enabled third parties rather than personally taking the data, § 31 supplies derivative liability here too: "there is no

material difference between the liability-creating language" of § 632 and § 502(c)(2), and nothing shows the Legislature meant to exclude § 31 from the CDAFA. *Smith III*, 2026 WL 183852, at *2.

## VI. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Huel's remaining argument for dismissal is that Plaintiff "has failed to establish a legally protected privacy interest and a serious invasion of privacy." Mot. at 14. Not so.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Plaintiff satisfies both elements.

***First,*** "[w]hether a user had a reasonable expectation of privacy is a mixed question of fact and law. . . Courts consider whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Ortiz v. Foris Dax, Inc.,* 2026 WL 1430720, at *2 (N.D. Cal. May 21, 2026) (cleaned up). The Ninth Circuit has already settled the issue. "[A] user has a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track." *Id.* at *3 (citing *In re Facebook*, 956 F.3d, at 602). Ninth Circuit precedent is clear—the "critical fact" in a determining whether there is a reasonable expectation of privacy is whether "the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *In re Facebook*, 956 F.3d at 603.

Here, Huel promises customers (1) Strictly Necessary Cookies "do not store any personally identifiable information" (FAC Fig. 3), (2) the information collected by Performance Cookies "is aggregated and therefore anonymous" (FAC Fig. 4), and (3) that Targeting Cookies "do not store directly personal information" (FAC Fig. 6). *See also* FAC ¶ 116 ("Defendant installs these Tracking Technologies despite its understanding that its customers reasonably anticipate their identifiable information to be kept confidential and undisclosed to Third Parties. "). Nothing more is required to establish Plaintiff had an objectively reasonable expectation of privacy in ***anonymized tracking***. *See e.g.* FAC ¶¶ 5–6, 8, 11–13, 17–27, 110, 116, Figs. 3–4, 6; *Spring Fertility*, 2026 WL 1483490, at *2 ("if users were also told that all the information shared would be anonymized, then that could lead to a reasonable expectation that their personally identifying data would not be shared").

***Second***, whether conduct is "highly offensive" is fact-bound and turns on "the degree of the intrusion, the context, conduct, and circumstances surrounding the intrusion, as well as the intruder's motives and objectives, the setting into which he or she intrudes, and the expectations of those whose privacy is invaded." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 3 (1994). "Deceit can be a kind of 'plus factor' in determining whether an action is highly offensive." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d at 917. Here, Plaintiff alleges far more than the generic web analytics. She alleges Huel deliberately represented targeting cookies "do not store directly personal information," and then still configured the tracking technologies to share her personally identifiable information and purchase information. FAC ¶¶ 5–6, 8, 12–13, 17–27, 110, 116, Figs. 3–4, 6. A jury could reasonably conclude this is an egregious breach of social norms. *Motorola*, 2025 WL 1939957, at *10 ("it is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is."); *Haleon*, 815 F. Supp. 3d at 868 (same); *Casillas*, 812 F. Supp. 3d at 1030 ("allegations that Plaintiff's content information was 'surreptitiously' collected and tracked without her consent . . . are sufficient to survive Defendant's Motion to Dismiss").

Huel's authorities are distinguishable because none involved a defendant that promised anonymity and then disclosed identifiable data to third parties for their own use anyways. For example, the court in *In re Yahoo Mail Litigation* noted the plaintiffs did not allege their emails were confidential. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014). By way of contrast, here Plaintiff does not rely on non-consent alone but on Defendant's ***affirmative*** representations that all tracking was done anonymously. FAC ¶¶ 5–6, 8, 12–13, 17–27; Figs. 3–4, 6. *Folgelstrom v. Lamps Plus, Inc.*, is similarly inapposite, as there, the retailer did not affirmatively represent it did not collect such information. *Compare Folgelstrom*, 195 Cal. App. 4th 986; *with In re Facebook* 956 F.3d at 601; *Motorola*, 2025 WL 1939957, at *10.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Huel's Motion to Dismiss in its entirety. Should the Court dismiss any claim, Plaintiff respectfully requests leave to amend.

Dated: September 10, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave, Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*